𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝕿𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆

RECEIVED
USDC CLERK, CHARLESTON, SC

BEAUFORT DIVISION

2006 APR −3  ⊓ 12: 22

| | |
|---|---|
| Charles Brockington, Jr., #389337, ) | Civil Action No. 9:05-2217-CMC-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Susie McDougal, Head Nurse at Florence ) | |
| County Detention Center; Doctor in ) | |
| Charge of Facility; Entire Medical ) | |
| Department at Florence County Detention ) | |
| Center; and Administration of Florence ) | |
| County Detention Center, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.    INTRODUCTION

The Plaintiff, Charles Brockington ("Plaintiff" or "Brockington") was an inmate at the Florence County Detention Center ("FCDC") at the time of the alleged incidents giving rise to this action. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 from Susie McDougal, head nurse at Florence County Detention Center, Doctor in Charge of Facility, Entire Medical Department at Florence County Detention Center; and Administration of Florence County Detention Center (collectively, the "Defendants") based upon allegations of negligence, willful endangerment, and that he was denied appropriate medical care which constitute cruel and unusual punishment.



Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

Plaintiff alleges that at the time he was booked into the Florence County Detention Center ("FCDC") on April 26, 2005, he informed the booking officers that he was allergic to Tylenol and Norvasc, and signed a release so that FCDC personnel could consult his doctor about medication he allegedly had been prescribed. Plaintiff contends that approximately seven (7) days later, he passed out in his cell due to a lack of necessary medication. Plaintiff claims he informed the medical department that he required Naproxin, Verapamil 240 mg, and Glavinistine, which he alleges were prescribed to him. Subsequently, Plaintiff claims he passed out a second time in his cell after Tylenol was given to him by an Officer at FCDC pursuant to the instructions of Nurse McDougal. According to Plaintiff, Nurse McDougal admitted her mistake, stated she was not a doctor, and also stated she was not sure the Officer gave Brockington the correct medication.

On June 16, 2005, Plaintiff claims a FCDC officer again presented him with the wrong medication (Norvasc), which caused him to pass out. Plaintiff further claims that on June 20, 2005, he was given Verapamil (non-time release) 240 mg instead of Verapamil 240 mg SR (time release), which caused "mucus from eyes" as well as water from eyes, dizziness and other minor symptoms. *See* Complaint, IV. Finally, Plaintiff claims that he was last seen by a doctor on June 28, 2005 and, as of July 14, 2005, he experienced severe pain in his left knee, fever in his shoulder and eyes and dizziness. Plaintiff alleges he was told he would not be seen by medical staff unless he was dying.[1] Plaintiff seeks monetary damages, termination of employees, an apology and other miscellaneous remedies.  [1-1]



---

[1]     After Plaintiff had filed his Complaint, he informed the Clerk of Court August 28, 2005 that he had been released from FCDC. [7-1] On November 19, 2005, Plaintiff was arrested pursuant to a bench warrant issued because he had failed to appear in the Court of General Sessions, and again detained in FCDC. *See* [21-1] Plaintiff has made additional allegations of inadequate medical care with respect to his November detention in his Response to Defendants' Motion [21-1] and in an additional filing [24-1], but because these allegations are separate and distinct from the allegations set forth in the Complaint, the court will decline to address those additional allegations in this Report and Recommendation.

## IV. PROCEDURAL HISTORY IN FEDERAL COURT

On July 15, 2005, Plaintiff commenced this Section 1983 action[2] against the Defendants, alleging negligence, willful endangerment, and denial of medication and treatment.[3] [1-1] In response, the undersigned issued an Order directing the issuance of summonses, and directed the Defendants to file answers to the complaint. [5-1] On September 27, 2005, the Defendants timely filed an Answer to the Plaintiff's complaint, setting forth various affirmative defenses. [9-1]

On December 19, 2005, the Defendants filed a Motion for Summary Judgment along with a supporting memorandum. [14-1; 18-1] On December 20, 2005, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' Motion, the dismissal procedure and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days. [17-1]

In response, on December 30, 2005 the Plaintiff filed his Opposition to Defendants' Motion for Summary Judgment. [21-1] On January 3, 2006, the Defendants filed a Reply to Plaintiff's Opposition to Defendants' Motion. [22-1]

## V. THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

Summary judgment separates the wheat from the chaff, and disposes of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A



---

[2]    42 U.S.C. §1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[3]    Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988), should a limitations issue arise in this action. See this Court's Order dated August 11, 2005. [4-1]

summary judgment motion requires the court to look beyond the pleadings and ask whether there is a genuine need for trial. *Matsushita Electric Industr. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-53 (1986). If a defendant demonstrates the absence of evidence to support a claim, then the plaintiff must come forward with evidence to show that there remains a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for plaintiff. *Anderson,* 477 U.S. at 248. A "material" fact issue is one that might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of a plaintiff's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23. Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251.

## VI. ANALYSIS

### A. The Proper Defendants to this Action

In addition to Nurse McDougal, the Plaintiff has named as Defendants "Doctor in Charge of Facility;" the "Entire Medical Department at Florence County Detention Center;" and "Administration of Florence County Detention Center." As a threshold matter, a "Doctor in Charge of Facility" does not exist at FCDC, as attested to by the Affidavit of Susie McDougal, in which she states that she is the nurse at FCDC.[4]



In addition, the defendants "Entire Medical Department at Florence County Detention Center;" and "Administration of Florence County Detention Center" are not legal entities and thus are not proper parties to the suit pursuant to Section 1983. Instead, the *sui juris*

---

[4]        See Affidavit of Susie McDougal [14-2] at ¶¶ 1 and 15.

defendant in this case is the Sheriff of Florence County, who is in charge of the FCDC. Florence County Sheriff Kenny Boone is an elected Sheriff, as established by Article V, § 24, of the South Carolina Constitution. Pursuant to S.C. Code Ann. § 24-5-10, entitled "Sheriff as Custodian of Jail," "[t]he Sheriff shall have custody of the jail in his county[.]" The South Carolina Supreme Court has held that County Detention Centers are jails within the meaning of S.C. Code Ann. § 24-5-10. *See Roton v. Sparks*, 270 S.C. 637, 244 S.E.2d 214 (1978). Thus, by statute, the FCDC is under the control of the Sheriff of that county, and the Sheriff should be substituted as a proper defendant in this action.

Having done so, the court next will turn its attention to whether Sheriff Boone is amenable to suit under Section 1983. The Eleventh Amendment bars any Section 1983 damages claim in federal court against Sheriff Boone in his official capacity as a deputy sheriff. *See* U.S. Const. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). Immunity under the Eleventh Amendment extends to arms of the State, including State agencies and State officials acting in their official capacities. *Cromer v. Brown*, 88 F. 3d 1315, 1324 (4th Cir. 1996). South Carolina Sheriffs are State officials and not County officials for purposes of the Eleventh Amendment. *Id.; see also Gulledge v. Smart*, 878 F. 2d 379 (4th Cir. 1989); *McCall v. Williams*, 52 F.Supp.2d 611, 616 (D.S.C. 1999); *Carroll v. Greenville County Sheriff's Dep't.*, 871 F.Supp. 844, 846 (D.S.C.1994).



Assuming that Sheriff Boone is being sued in his official capacity, then the suit actually intended as one against the State of South Carolina, as the real party in interest. The State, however, also is entitled to immunity from suit pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars suits in Federal Court for monetary damage against a State which does not consent to suit. Accordingly, suit will not lie against Sheriff Boone or against the State of South Carolina.

**B.  Whether Nurse McDougal is entitled to Summary Judgment**

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs because he was given Tylenol after he allegedly informed FCDC medical staff that he was allergic to Tylenol.  As a threshold matter, the Plaintiff was a pre-trial detainee at the time the actions of which he complains occurred.  It is well settled that a claim for the denial of medical care for a pre-trial detainee is analyzed under the due process clause of the Fourteenth Amendment, while a claim for the denial of medical care for a convicted prisoner is analyzed pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992) (pre-trial detainee) *and Farmer v. Brennan*, 511 U.S. 825 (1994) (convicted prisoner).  Nevertheless, a pretrial detainee's claim alleging inadequate medical care is analyzed in the same way as a claim under the Eighth Amendment to determine whether prison officials showed a deliberate indifference to a serious medical need. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Indeed, both prisoners and detainees are entitled to reasonable medical care and may bring suit against prison officials if they can show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir.1990) *citing Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988).  The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.*



As *Estelle* teaches, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment violation. *Id.* at 105-106. Furthermore, unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which they were aware at the time, a plaintiff may not prevail. *Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986).

Thus, mere negligence or malpractice does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106; *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985). Indeed, as the Fourth Circuit has held, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness"[.] *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted). The same analysis would hold true under the Fourteenth Amendment with respect to the rights of pre-trial detainees.

With these standards in mind, the court will turn its attention to Plaintiff's claims  against Nurse McDougal.[5] In the present case, it is undisputed that Plaintiff was administered medication other than the medication which previously had been prescribed to him. It is likewise undisputed that Plaintiff was administered Tylenol and Norvasc on two occasions.[6] Nevertheless, Plaintiff's medical records from FCDC and Nurse McDougal's affidavit both

---

[5]   McDougal states in her affidavit that she is the only nurse at FCDC and sees between twenty-five and forty inmates a day. *See* McDougal Affidavit [14-2] at ¶ 15.

[6]   Although Plaintiff's records from the Veterans' Administration do not state that Plaintiff was allergic to Tylenol, the court will take as true his allegation, as made in his Complaint, that he was allergic to Tylenol. In addition, the court notes that Plaintiff informed Nurse McDougal on May 2, 2005, at the time of his initial health appraisal, that he was allergic to Tylenol. *See* [14-2] at ¶ 3.

indicate that Plaintiff did not suffer any serious physical injury, nor did he suffer any sufficiently serious deprivation of a basic human need that would impinge upon his constitutional rights under the Fourteenth Amendment. Although Nurse McDougal may have been careless in her actions, allegations of negligence simply do not state a valid claim of medical mistreatment under the constitution. At best, Plaintiff mistakenly received certain medications, but these facts cannot, and do not state a cause of action under Section 1983.

The affidavit of Nurse McDougal shows that Plaintiff's medical needs were not treated with deliberate indifference. For example, in response to Plaintiff's Sick Call Request of April 27, 2005 requesting medication for pain in his right shoulder, Nurse McDougal responded on May 2, 2005 by conducting an initial health appraisal of him. On May 3, 2005, Nurse McDougal received a fax confirmation from the Department of Veterans Affairs (the "VA") enclosing Plaintiff's medical records, which showed that he had not received medical treatment in almost two years (since August 11, 2003). The VA records stated Plaintiff was allergic to acetaminophen No. 3 and I.V.P. dye, and revealed that he had been prescribed Verapamil HEL 240 mg SA tabs for blood pressure and cluster headaches.[7] At that time, Nurse McDougal began monitoring Plaintiff's blood pressure and health condition, since he apparently had not received any medical treatment since August 2003.[8]



On May 11, 2005, Plaintiff submitted an inmate Sick Call Request stating he had pain in his arm and needed pain medication. Nurse McDougal, in response, gave him Tylenol for his pain, which is the standard medication administered to inmates for pain.[9] Nurse McDougal admits "I gave inmate [Plaintiff] Tylenol by mistake, not thinking about his being allergic to that particular medication. I may have overlooked the fact he was allergic to

---

[7]    See McDougal Affidavit [14-2] at ¶ 4.

[8]    See McDougal Affidavit [14-2] at ¶ 5.

[9]    See McDougal Affidavit [14-2] at ¶ 6.

Tylenol at the time. I was simply trying to alleviate his pain."[10] According to McDougal, "Tylenol is the primary medicine we use to help patients."[11] On the same date, Nurse McDougal and staff began monitoring Plaintiff's blood pressure, as noted in the vital signs log attached to Nurse McDougal's affidavit.[12] On the following day, Plaintiff served a letter on Sheriff Boone complaining of his medical treatment and essentially claiming that he was not being given medication.[13] Nurse McDougal subsequently responded to Sheriff Boone by informing him that she and her staff were monitoring Plaintiff's blood pressure weekly and giving him Tylenol for pain.[14]

On May 16, 2005, Plaintiff submitted another Sick Call Request, complaining of pain in his right shoulder and fever in his right foot and left knee. Nurse McDougal responded to this request on May 18, 2005 by reiterating to him that she was monitoring his blood pressure weekly and administering Tylenol for his general pain.[15] Nurse McDougal also stated in her Affidavit "because I never received a complaint from [Plaintiff] stating he was harmed by [Tylenol]" she mistakenly gave him Tylenol in an attempt to alleviate him pain.[16]

On June 3, 2005 Nurse McDougal testified that Plaintiff was prescribed Norvasc 10 mg per the prescription of Dr. W. Freeman Parker, Jr. to treat Plaintiff's increasing blood pressure.[17] According to McDougal, "[a]t that time, there was no indication from any past



---

[10]    *Id.*

[11]    *See* McDougal Affidavit [14-2] at ¶ 15.

[12]    *See* McDougal Affidavit [14-2] at ¶ 7.

[13]    *See* McDougal Affidavit [14-2] at ¶ 8 *and* letter to Sheriff Boone, attached to McDougal's Affidavit as Exhibit D.

[14]    *See* McDougal Affidavit [14-2]at ¶ 9.

[15]    *See* McDougal Affidavit [14-2]at ¶ 10.

[16]    *Id.*

[17]    *See* McDougal Affidavit [14-2]at ¶ 11.

medical records or from Plaintiff that he was allergic to Norvasc. Norvasc is the standard high blood pressured medication given to inmates by the Florence County Detention Center."[18] Two weeks later, on June 17, 2005, Dr. Parker issued another telephone prescription order to discontinue the Norvasc and substitute Verapamil SL 240 mg to treat Plaintiff's increasing level of high blood pressure because the Norvasc did not appear to be lowering Plaintiff's high blood pressure and because Plaintiff's medical records forwarded to FCDC from the VA indicated he previously had been prescribed Verapamil[19].

Furthermore, although Plaintiff has alleged he suffers from pain, Plaintiff's medical records, attached as exhibits to Nurse McDougal's Affidavit, show no objective evidence upon which one could infer that Nurse McDougal's treatment of him contributed to any of his alleged medical conditions or any significant physical or emotional injury. To the contrary, Nurse McDougal's Affidavit, and well as Plaintiff's medical records, show that his condition improved and remained improved following her medical treatment and that his complaints of pain were also treated conscientiously, in light of the fact that Nurse McDougal ordered Plaintiff be kept on medical watch in June for twenty (20) days[20] from June 7, 2005 until June 27, 2005 so that his medical condition could be monitored daily every thirty minutes or every hour.[21]



The medical records of the FCDC and the testimony of Nurse McDougal state: "[B]y June 28, 2005, [Plaintiff's] blood pressure had subsided to a normal reading of 134/87 due to our [attention] to his condition. Since [Plaintiff's] incarceration in April of 2005, I have only received three requests for medical treatment, dated May 2, 2005 [the initial consultation],

---

[18]     *Id.*

[19]     *See* McDougal Affidavit [14-2]at ¶ 12.

[20]     *See* McDougal Affidavit [14-2] at ¶¶ 18-20 and 13.

[21]     *See* McDougal Affidavit [14-2]at ¶ 13.

May 11, 2005 and May 18, 2005.  [Plaintiff], again, was monitored every thirty minutes or every hour daily between June 7, 2005 and June 27, 2005."[22]  According to Nurse McDougal, "in contrast to [Plaintiff's] claim that we have not seen him since June 28, 2005, I saw [him] on August 8, 2005 and his blood pressure appeared under control."

The affidavit testimony of Nurse McDougal shows that she acted reasonably and in good faith.  As Nurse McDougal stated:  "[M]y review of [Plaintiff's] medical records and my own recollection of my treatment of [Plaintiff's] medical problems reveal that [Plaintiff] was treated properly for all of his medical problems and I was never deliberately indifferent to any of his serious medical needs."[23]

Finally, with regard to Plaintiff's complaint that FCDC corrections officers, and not members of the nursing staff, administered medication to him in violation of policy, Nurse McDougal testified, "it is the policy of the [FCDC] that an officer may give inmates medication due to our lack of personnel and the fact that I am the only nurse on duty."[24]

Based upon the foregoing, the court concludes that Plaintiff has failed to identify any violation of his federal constitutional or statutory rights.

## RECOMMENDATION

It is recommended that the **Defendants' Motion for Summary Judgment [14-1] be granted.**

George C. Kosko
United States Magistrate Judge

April **3** , 2006
Charleston, South Carolina

---

[22]  See McDougal Affidavit [14-2] at ¶ 8.

[23]  See McDougal Affidavit [14-2] at ¶ 20.

[24]  See McDougal Affidavit [14-2] at ¶ 8.

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a

magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
